982 A.2d 7 (2009)
410 N.J. Super. 280
UNITED CONSUMER FINANCIAL SERVICES COMPANY, Plaintiff-Appellant/Cross-Respondent,
v.
William CARBO, individually, and on behalf of all others similarly situated, Defendant/Third-Party Plaintiff-Respondent/Cross-Appellant,
v.
A & M Merchandising, Inc.; J & N Distributing Co., Inc.; FDR Ent., Inc./Tri County Kirby; Xcel Enterprises, L.L.C.; AKVAC, L.L.C.; Union County Kirby Co.; A & C Distributing Co., Inc.; Omega Trading, Inc.; Advance Kirby; N.J. Easy-VAC. Co.; MSB Marketing; BCK Distributors, Inc.; Omni Concepts, Inc.; J and N Distributing Co.; J.W. Marketing & Dist., Inc.; JMC Generation System, L.L.C.; Prestige Merchandising Co., Inc.; K Quality Corp.; BES Assoc., Inc.; All City Vacuum, Inc.; Pocono Kirby; TPR Enterprises; RAS Management, Inc.; Generation Three; Brookdale Merchandising; Brooklyn/Queens Merchandising; R-W Merchandising; LBA Distributors; MGM Distributors; K.Q. Systems; Kirby Center of Orange County; and K & M Distributing Company, Third-Party Defendants-Respondents/Cross-Appellants, and
Northern Marketing Group, Inc.; Sulco Industries, Inc.; Interstate Marketing, Inc.; A & B International; E.C.M.A., Inc.; D & M Home Care Products Ent.; Kirby of Newburg; Vini Merchandising, Inc.; Aaaction Kirby, Inc.; A & H Merchandising, Inc.; D. Wood Merchandising, inc.; MB Merchandising, Inc.; Kirby of Rockland; F.Y.F. Ent. d/b/a Berlin Kirby; NKA Enterprises; JBK Kirby Distributing; A & T International, Inc.; LBS Enterprises; Hudson Valley Kirby; Anecsa Success Corp.; Premiere II Series, Inc.; Intercity Marketing, Inc.; RHM Marketing, Inc.; K & J Associates; D.M.C. Enterprises, Inc.; D.J. Enterprises; J.D.K. Distributors; AVKKO Enterprises; *8 South Bay Distributing; D.C. Distributors; K.D.C. Associate Kirby, Inc.; JDF & Associates, Inc.; Domestic Technologies; E.J. Lim Enterprises, Inc.; P.M.C. Enterprises; and A.V. Associates, Third-Party Defendants.
DOCKET NO. A-5501-06T2.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 2009.
Decided October 22, 2009.
*13 Jeremiah L. O'Leary, argued the cause for appellant/cross-respondent (Finazzo Cossolini O'Leary Meola & Hager, attorneys; Mr. O'Leary and David J. DiSabato, Short Hills, of counsel and on the brief).
Andrew R. Wolf, North Brunswick, argued the cause for respondent/cross-appellant William Carbo (Galex Wolf, attorneys; Mr. Wolf, Henry P. Wolfe, Lora B. Glick and Jonathan A. Kipnis, Brunswick, on the brief).
William H. Trousdale, Newark, argued the cause for respondents/cross-appellants A & M Merchandising, Inc., et al. (Tompkins, McGuire, Wachenfeld & Barry, attorneys; Mr. Trousdale, of counsel; Brian M. English, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
This appeal is from orders entered on claims pursued by a certified class consisting of consumers who entered into substantially similar retail installment sales contracts with distributors who sell Kirby vacuum cleaners door-to-door.[1] The trial court's rulings on class certification, liability, injunctive relief, damages, counsel fees and pre-and post-judgment interest were made on a series of motions decided between May 21, 2004 and June 6, 2007. None of the issues were tried.
*14 Plaintiff United Consumer Financial Services Company (UCFSC), which accepts assignments of retail installment contracts obtained by door-to-door sellers of Kirbys, commenced the litigation to collect the amount defendant William Carbo owed on his retail installment contract with door-to-door seller A & M Merchandising, Inc. (A & M). Carbo filed a counterclaim against UCFSC and a third-party complaint against A & M, and he obtained class certification authorizing the identification of additional Kirby distributors who used similar contracts and the consumers who accepted them.
The class prevailed on claims alleging violations of the Door-to-Door Retail Installment Sales Act, N.J.S.A. 17:16C-61.1 to -61.9; the Retail Installment Sales Act, N.J.S.A. 17:16C-1 to -61; and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18. Pursuant to N.J.S.A. 56:12-17, each of the 16,845 class members was awarded a civil penalty of $100, without pre-or post-judgment interest, and is exempt from payment of interest due during the three-year period of a preliminary injunction that restrained enforcement of the contracts. UCFSC and the distributors are jointly and severally liable for the civil penalty. In addition, they must pay class counsel $25,852.10 for costs and a fee of $1,008,583.20, which includes fifty-percent enhancement of the lodestar. Injunctive relief was also awarded; the permanent injunction bars use of the contract in its present form.[2] An order implementing the judgment was entered on June 6, 2007.
Class claims alleging violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and the Licensed Lenders Act, N.J.S.A. 17:11C-1 to -50; fraud; breach of contract; violation of the covenant of good faith and fair dealing; and unjust enrichment were dismissed. UCFSC's claim against Carbo was settled and dismissed after the class claims were resolved.
UCFSC appeals and the third-party defendant distributors cross-appeal; both challenge rulings in favor of the class. Carbo cross-appeals claiming error based on the dismissal of class claims and the denial of rescission and pre-and post-judgment interest.
The facts material to the class claims are not in dispute. The retail installment sales contracts entered into by the members of the class and their respective distributors are substantially the same, and the consumers were given substantially similar notices and forms relating to their right to cancel the contract within three business days of the purchase.
The contracts are in a form prescribed by UCFSC for use by the distributors from whom it accepts assignments. They permit "assignment to [UCFSC]" which is then "considered a creditor" of the consumer. Each contract reserves the distributor's right to cancel the sale if it is "not assigned to [UCFSC], or any other creditor." UCFSC also gives the distributor a manual that includes guidance on completion of the form contracts and notices.
Carbo purchased his Kirby and signed his retail installment sales contract with A & M through a door-to-door seller on September 16, 2000. The price of his Kirby, excluding sales tax, was $1600; with the interest chargeable under the retail installment sales contract, a total of $2259 was due if all payments were made timely and without penalty. The contract authorizes a $20 charge if a check submitted as payment *15 "is dishonored for any reason" and a $10 penalty for late payments.
Carbo's first language is Spanish, and both of the salesmen who visited Carbo's home spoke Spanish. The form contract they entered into was printed in Spanish, and Carbo received one copy of that contract printed in that language.
The contract Carbo signed advises that he may cancel the transaction at any time prior to midnight of the third business day. That advice is printed in capital letters and ten-point bold type directly below the space provided for his signature. In addition, immediately below, there are two identical "notice[s] of cancellation," one which Carbo could use if he opted to cancel and one he could retain. These "notices of cancellation" describe what Carbo had to do to cancel and the seller's obligation to accept, refund the payment and terminate any security interest.
The "notice of cancellation" provides no information identifying the contract or the sale other than the name and address of the buyer and seller. The product and price are stated only in the contract.
As noted above, the contracts and "notices of cancellation" given to the 16,845 class members are substantially similar to Carbo's in all material respects. When the contracts and "notices of cancellation" were printed in a language other than English, that language was used throughout.
UCFSC designed its contracts and "notices of cancellation" to conform with rules adopted by the Federal Trade Commission (FTC), 16 C.F.R. §§ 429.1 to 429.3. UCFSC's manual for distributors advises that "individual state law applies when it is more favorable to the consumer," but the UCFSC forms prepared for use in New Jersey include no special terms, notices or cancellation forms.
There is no evidence that any consumer was dissatisfied with the Kirby purchased, attempted to exercise and was denied the right to rescind or was charged a fee for submitting a check or other instrument for payment that was subsequently dishonored.

I
We first consider the challenge to class certification. The distributors, other than A & M, contend that the trial court erred in authorizing Carbo to maintain a class action against them because they were not involved in his transaction in any way. We reject that argument substantially for the reasons stated in written opinions filed with orders dated May 21, 2004, June 23, 2005 and March 9 and May 30, 2007.[3]
Class certification is a matter committed to the sound exercise of the trial court's discretion. See Muise v. GPU, Inc., 371 N.J.Super. 13, 29, 851 A.2d 799 (App.Div.2004) (noting that the Supreme Court applied this standard of review to a ruling on class certification in In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 436-37, 461 A.2d 736 (1983)). Rule 4:32-1 must be liberally construed, and a class action is the favored means of adjudicating numerous claims involving a common nucleus of facts for which each individual's recovery will be small. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103-06, 922 A.2d 710 (2007).
The common nucleus of fact in this class action is the content and form of the contract and notices prepared by UCFSC *16 and used in each transaction. The distributors are each joined in the action based on their use of the UCFSC-approved documents in one or more separate transactions with one or more members of the class. The link that each distributor has with a member of the class is the UCFSC-approved documents that are the source of the class claims. Courts of other states considering class claims based on a single business protocol established by one co-defendant have permitted the class claims to proceed against multiple defendants who have used the co-defendant's protocol in separate transactions with different members of the class. See, e.g., Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 746 N.E.2d 522, 529-31 (2001) (finding "juridical links" adequate to permit a plaintiff who dealt with only one drug manufacturer that participated in a protocol developed by CVS to pursue class claims against other drug manufacturers who participated in the same CVS protocol in dealing with other members of the class). The trial court relied on that precedent, and given this State's liberal rules governing class actions, Iliadis, supra, 191 N.J. at 103-06, 922 A.2d 710, and standing, James v. Arms Tech., Inc., 359 N.J.Super. 291, 320-21, 820 A.2d 27 (App.Div.2003), we cannot conclude that the trial court abused its discretion. The argument presented by the distributors to the contrary requires no additional discussion beyond that provided by the trial court. R. 2:11-3(e)(1)(E).

II
UCFSC and the distributors object to the trial court's grant of summary judgment in favor of the class on various violations of the Door-to-Door Retail Installment Sales Act (DDRISA), N.J.S.A. 17:16C-61.1 to -61.9. In accordance with Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995), we consider whether the class was entitled to judgment as a matter of law. In this case, that determination depends not only upon whether UCFSC and the distributors violated DDRISA but also whether the provisions of DDRISA at issue can be enforced or are preempted by regulations adopted by the FTC, 16 C.F.R. §§ 429.1 to 429.3.

A
The Legislature enacted DDRISA in recognition of "often unethical persuasion of certain door-to-door sellers" and to enable all consumers who make a purchase in that circumstance "to reconsider . . . within a reasonable period." N.J.S.A. 17:16C-61.3. Thus, DDRISA mandates a "cooling-off period" during which the consumer has a statutory right to rescind the transaction. Ibid. The protection is prophylactic; it applies to all covered sales regardless of the quality of the product or the tactics employed. N.J.S.A. 17:16C-61.5. To give effect to the right, DDRISA requires the seller to give the buyer notice of the right and how it can be exercised, in a specified form, at the time of the transaction. N.J.S.A. 17:16C-61.6.
Four years after the enactment of DDRISA in 1968, L. 1968, c. 223, the FTC, in the exercise of its authority pursuant to 15 U.S.C.A. § 45, adopted rules mandating a similar "cooling-off period" and similarly obligating sellers to give consumers notice of their rights to cancel. 16 C.F.R. §§ 429.0 to 429.2; 37 Fed.Reg. No. 22934 (Oct. 26, 1972); see generally Am. Fin. Servs. Ass'n v. FTC, 767 F.2d 957, 966 (D.C.Cir.1985) (discussing the authority delegated to the FTC), cert. denied, 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986); Crystal v. West & Callahan, Inc., 328 Md. 318, 614 A.2d 560, 564-65 (1992) (discussing the history of the FTC's action to regulate door-to-door sales and its impact upon state law).
*17 The New Jersey Legislature has not opted to revise DDRISA to mirror the FTC rule. While the FTC rules and DDRISA are similar, they are not identical, and where there are differences, preemption is a preliminary question.
By force of the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 674 (1982), Congress and federal agencies acting within the scope of their authority may supersede or "preempt" state laws regulating the same conduct. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 77, 577 A.2d 1239 (1990); see La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 369, 106 S.Ct. 1890, 1898-99, 90 L.Ed.2d 369, 382 (1986); R.F. v. Abbott Labs., 162 N.J. 596, 619, 745 A.2d 1174 (2000). Or, the federal government may share regulation of the field, allowing the states to act. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). The intent of Congress or the federal agency is determinative on the question of preemption. Dewey, supra, 121 N.J. at 77, 577 A.2d 1239.
In adopting its "cooling-off period" rules, the FTC elected to share the field. The FTC reached that decision after recognizing that thirty-three states, including New Jersey, had adopted "cooling-off legislation" and noting the difficulties inherent in permitting differences in "essential provisions," such as the duration of the period, and the mechanics involved, such as "forms of notices." 37 Fed.Reg. at 22935 & n. 6, 22960. Nonetheless, the FTC opted to seek uniformity by encouraging rather than compelling "the various States to eliminate or change those requirements of their respective laws which are inconsistent with [its] rule." Ibid.; see id. at 22957-60 (discussing the competing views expressed during the rulemaking process).
The present FTC rule includes an explicit statement on preemption. 16 C.F.R. § 429.2(b) provides:
This part will not be construed to annul, or exempt any seller from complying with, the laws of any State or the ordinances of a political subdivision thereof that regulate door-to-door sales, except to the extent that such laws or ordinances, if they permit door-to-door selling, are directly inconsistent with the provisions of this part. Such laws or ordinances which do not accord the buyer, with respect to the particular transaction, a right to cancel a door-to-door sale that is substantially the same or greater than that provided in this part, which permit the imposition of any fee or penalty on the buyer for the exercise of such right, or which do not provide for giving the buyer a notice of the right to cancel the transaction in substantially the same form and manner provided for in this part, are among those which will be considered directly inconsistent.
Under this rule, a state-mandated deviation from the FTC rule is not preempted if it favors the consumer and does not preclude compliance with the FTC rule. FTC, ADVISORY OPINION: Possible conflict, as to notice requirements, between State law and FTC's Trade Regulation Rule Concerning A Cooling-Off Period for Door-to-Door Sales (16 C.F.R. 429) (May 20, 1975), 85 F.T.C. 1215 (1975).[4] "[L]anguage in a State notice, the effect of which is to misrepresent in any manner the buyer's right to cancel under the [FTC's] Rule, must be omitted or stricken because *18 directly inconsistent," but "language in a State notice which informs buyers of State-created rights in addition to those conferred upon them by the Rule, or informs them how to be entitled to those rights, may be included in a new contract or receipt forms. . . ." Ibid. The FTC has no objection to a "composite notice containing elements of both the [FTC] notice and the State notice, provided that the composite notice expresse[s] no restrictions or limitations upon the buyer's right" under the FTC rule and "inform[s] the buyer of a right to cancel at least as extensive as that" stated in the FTC notice.
The FTC's rule and statements on the preemptive effect of its regulation are consistent with the general principle that when a federal entity elects to share the field, state law is preempted if "it is impossible for a private party to comply with both" the federal rule and state law. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352, 361 (2000). While a state law that interferes with the accomplishment of a federal objective is also preempted, see Fid. Fed. Sav. & Loan Ass'n, supra, 458 U.S. at 153, 102 S.Ct. at 3022, 73 L.Ed.2d at 675, it is apparent that a state law requiring additional notice of additional consumer rights in connection with the "cooling-off period" does not so interfere. As noted above, the FTC has acknowledged that forms drafted to comply with its rule and a state law that affords greater protection are not objectionable on that ground.

B
Application of the foregoing standards of preemption to DDRISA leaves no question that the duration of DDRISA's "cooling-off period" and DDRISA's requirement for cancellation by certified mail are preempted by the FTC rule.
The "reasonable period" for "cooling-off" specified in DDRISA ends at "5 p.m. of the third business day following the day on which the retail installment sale or retail installment contract is executed." N.J.S.A. 17:16C-61.5(a)(1); N.J.S.A. 17:16C-61.6(b). And, to exercise the statutory right to rescind within that period, the consumer must provide "notice of intent to rescind . . . by certified mail, return receipt requested, postmarked not later than 5 p.m." on the final day of the period. N.J.S.A. 17:16C-61.5(a)(1); N.J.S.A. 17:16C-61.6(b).
The FTC rule is more favorable to the consumer in both respects. Pursuant to 16 C.F.R. § 429.1(a), a seller at any door-to-door sale commits "an unfair and deceptive act or practice" if the seller does not inform the buyer of his or her right to "cancel th[e] transaction at any time prior to midnight of the third business day after the date of this transaction." The consumer may cancel by "mail[ing] or deliver[ing] a signed and dated copy of [the FTC] Cancellation Notice or any other written notice, or send[ing] a telegram" to the seller at its place of business. 16 C.F.R. § 429.1(b).
DDRISA's shorter "cooling-off period" and more burdensome method of cancellation do not afford New Jersey consumers protection "substantially the same or greater than that provided" in 16 C.F.R. § 429.1. 16 C.F.R. § 429.2. Accordingly, those provisions are preempted. As the retail installment contracts given to the members of this class complied with the FTC rule in both respects, the trial court quite properly recognized the preemption and did not find a violation of DDRISA on either of those grounds.

*19 C
The violations of DDRISA the trial court addressed were based on UCFSC's and the distributors' failure to: (1) include notice of additional consumer rights not addressed by the FTC rule, N.J.S.A. 17:16C-61.6(b); (2) identify the product purchased and its price, N.J.S.A. 17:16C-61.6(a)(1)-(3); (3) comply with DDRISA's specifications for typeface, N.J.S.A. 17:16C-61.6(e); and (4) provide a copy of the notice printed in the English language to class members whose contracts were otherwise printed in a language other than English, N.J.S.A. 17:16C-61.6(d). We conclude that N.J.S.A. 17:16C-61.6(e) is preempted and reverse the court's finding of a violation of that provision. Nonetheless, we hold that the "notice of cancellation" prepared by UCFSC and utilized by the distributors must be revised to include the additional information required by DDRISA and that the distributor must give a copy of the notice printed in the English language to a buyer whose notices are otherwise printed in a different language.

(1)
Notices given to the consumer at the time of a retail installment sales contract are important to achieving the goal of the "cooling-off period," which is to allow consumers to avoid improvident purchases made from door-to-door sellers. These notices, which must be given in duplicate under both schemes, N.J.S.A. 17:16C-61.6(a); 16 C.F.R. § 429.1(a), serve two functions. One, the notice describes the consumer's rights and obligations, and two, it is the form the consumer can use to cancel the sale. DDRISA uses the term "receipt" to refer to these critical forms and directs use of prominent introductory language, "NOTICE TO BUYER." N.J.S.A. 17:16C-61.6. The FTC rule allows the seller to select one of two labels for the form  "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION." 16 C.F.R. § 429.1(b).
The text of the duplicate "NOTICE OF CANCELLATION" appended to the contracts given to Carbo and the members of the class did not include a statement of all of the buyer's rights required by DDRISA. N.J.S.A. 17:16C-61.6(b) requires the notice to include, among other things, the following information: "FAILURE TO EXERCISE THIS OPTION [to rescind within the cooling-off period], HOWEVER, WILL NOT INTERFERE WITH ANY OTHER REMEDIES AGAINST THE RETAIL SELLER YOU MAY POSSESS." That information is not required by the FTC rule, which is silent on the question of rights other than those related to the "cooling-off period." 16 C.F.R. § 429.1.
The trial court concluded that the omission of information about retention of other remedies violated DDRISA. The court determined that the omitted information "is a significant explanation of consumer rights in New Jersey and clearly serves the legislative purpose" of providing, through DDRISA, "rights and remedies" that are "cumulative" of and do not "abrogate or impair" existing rights or remedies. N.J.S.A. 17:16C-61.9. We agree. Moreover, because the FTC rule does not address rights and remedies of the consumer other than those incidental to cancellation during the "cooling-off period," in this aspect DDRISA is more favorable to the consumer and not inconsistent with the FTC rule. Thus, this provision of DDRISA is not preempted, and the trial court properly found a violation.

(2)
Additional information required by DDRISA but not required by 16 C.F.R. *20 § 429.1 is omitted from the text of the duplicate "notice of cancellation" appended to the UCFSC contracts. The duplicate "receipt" required by DDRISA must include the "seller's name and place of business," a "description of the goods sold" and "[t]he amount of money paid." N.J.S.A. 17:16C-61.6(a)(1)-(3). The UCFSC's "notice of cancellation" does not include that description of the transaction; there is no identification of the product purchased or the price. The trial court concluded that information identifying the product and price is a practical measure that facilitates cancellation by identifying the transaction. This is a reasonable interpretation of DDRISA that is consistent with the Legislature's purpose in adopting the law.
Nonetheless, the trial court did not find a violation of N.J.S.A. 17:16C-61.6(a)(2)-(3). Instead, as urged by UCFSC and the distributors, the court read the contract and the appended duplicate "notice of cancellation" together, i.e., as one document comprising the "receipt" required by DDRISA. Based upon that reading, the court determined that the information was provided.
The difficulty with this holistic view of the contract and receipt is that the consumer is given a "receipt," to be used to cancel the contract that does not identify the transaction. Accordingly, we conclude that to the extent that this duplicate "notice of cancellation" does not state the product or price, it does not comply with N.J.S.A. 17:16C-61.6(a)(2)-(3). Because the FTC rule does not address the issue, this information required by DDRISA can be included in the "notice of cancellation" without violating the FTC rule.

(3)
UCFSC and the distributors contend the trial court erred in finding a violation of DDRISA based upon typeface included in the retail installment sales contract. We agree.
DDRISA limits the use of certain typeface. N.J.S.A. 17:16C-61.6(e) provides: "The receipt required to be delivered to the retail buyer [other than the specified notice of the buyer's rights] . . . shall be in a type-size less than 10 points high and in type other than bold." The violation the trial court found was based on use of the restricted typeface in the text of the contract, not in the "notice of cancellation," which is the "receipt."
This was error. By its unambiguous terms, this limitation applies to the "receipt" not to the retail installment sales contract. There is no reason for a court to give this provision broader reach than its terms permit and its narrow purpose allows. See Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 12-13, 951 A.2d 987 (2008). DDRISA was adopted to supplement the Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1 to -61, in order to address a specific issue in a narrow context  a "cooling-off period" after retail installment sales made door-to-door. L. 1968, c. 223. Moreover, application of the typeface limitation imposed in N.J.S.A. 17:16C-61.6(e) to the text of a retail installment sales contract would create a direct conflict with N.J.S.A. 17:16C-24, a provision of RISA that requires a statutorily mandated term of every retail installment sales contract to be printed in bold type of at least ten points. General rules of statutory construction require courts to interpret statutes addressing the same subject so as to minimize not generate conflicts.[5]See Sea Isle City, supra, 196 *21 N.J. at 12-17, 951 A.2d 987. Accordingly, we hold that N.J.S.A. 17:16C-61.6(e) does not apply to limit the print used in the contract.
We further conclude that DDRISA's limitation on ten-point bold type in the "receipt" cannot be applied to the receipt because that limitation is in direct conflict with federal regulation. The FTC rule, like DDRISA, requires notice of the buyer's rights in type that is ten point and bold. N.J.S.A. 17:16C-61.6(b); 16 C.F.R. § 429.1(b). But, the FTC notice includes information not required by DDRISA  advice about the buyer's right to a refund and obligation to return the goods purchased. Ibid. Thus, it would be impossible for a seller to prepare a receipt that complies with N.J.S.A. 17:16C-61.6(e) and with 16 C.F.R. § 429.1(b). For that reason N.J.S.A. 17:16C-61.6(e) is preempted.
Accordingly, we reverse the trial court's finding of a violation of DDRISA based upon N.J.S.A. 17:16C-61.6(e).

(4)
The trial court found an additional violation of DDRISA limited to "notice[s] of cancellation" printed in a language other than English. When a DDRISA "receipt" is printed in a language other than English, DDRISA requires delivery of one copy printed in that language and one copy printed in English. N.J.S.A. 17:16C-61.6(d). Although the FTC rule requires delivery of two copies of the "notice of cancellation" printed in the same language, 16 C.F.R. § 429.1, a seller can comply with both DDRISA and the FTC rule by providing a third copy. Thus, N.J.S.A. 17:16C-61.6(d) is not preempted, and we affirm the violation found by the trial court.

(5)
As a consequence of our determinations, the permanent injunction restricting use of contracts like the one at issue here must be modified in conformity with this opinion. The violations of DDRISA with respect to the form of the "notice of cancellation" that may be enjoined are: (1) the omission of advice that a decision not to cancel will not interfere with any other remedies available against the retail seller; (2) the seller's failure to include a description of the product and the price paid on the "receipt" or "notice of cancellation"; and (3) the failure to deliver a third copy of the "notice of cancellation," printed in the English language, when the duplicate notices are printed in a different language.
In conclusion, we recognize that compliance with DDRISA and the FTC imposes an additional burden on the sellers. Nonetheless, courts must acknowledge that the relative weight of the benefit to consumers and the burdens on sellers obligated to modify forms that comply with the FTC rule is a question for the Legislature and the FTC to resolve.

III
UCFSC contends that the court erred in concluding that the UCFSC form contract violates the Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1 to -61, because it permits the seller to charge a fee of $20 if a check is "dishonored for any reason." We agree with the trial court's interpretation.
N.J.S.A. 17:16C-42(e) states: "The retail installment contract or retail charge account may provide for a return check fee *22 not to exceed $20 which the holder of the contract may charge the buyer if a check of the buyer is returned to the holder uncollected due to insufficient funds in the buyer's account." RISA further provides that "[n]o retail seller, sales finance company, or holder shall . . . contract for, collect or receive from any retail buyer, directly or indirectly, any . . . amount for costs, charges, . . . fees, fines, penalties or other things of value in connection with retail installment contracts . . . other than the charges permitted by [RISA]. . . ." N.J.S.A. 17:16C-50 (emphasis added). The charge specified in this contract, which can be charged "for any reason," violates N.J.S.A. 17:16C-50 because it is not authorized by N.J.S.A. 17:16C-42(e) or any other provision of RISA.
It is not material that an unauthorized fee for a returned check was neither assessed against nor collected from a member of the class. N.J.S.A. 17:16C-50 was violated by "contract[ing] for" the right to assess a check fee not authorized by N.J.S.A. 17:16C-42(e).

IV
The trial court found that the violation of N.J.S.A. 17:16C-61.6(e) and RISA gave rise to a private right of action warranting imposition of a $100 civil penalty pursuant to the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. We affirm that determination only with respect to the violation of RISA.
TCCWNA provides:
No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the . . . consumer contract is signed. . . .
[N.J.S.A. 56:12-15 (emphasis added).]
This court has held that the act of offering a consumer contract that violates a legal right of a consumer under the law is sufficient to establish a violation of this statute. Bosland v. Warnock Dodge, Inc., 396 N.J.Super. 267, 278, 933 A.2d 942 (App.Div.2007), aff'd on other grounds, 197 N.J. 543, 964 A.2d 741 (2009). Here, we have affirmed the trial court's determination that these contracts include a check fee prohibited by RISA and thereby violate N.J.S.A. 17:16C-50. Based upon that violation of RISA, the trial court found these contracts violated a clearly established "legal right" of the members of the class within the meaning of TCCWNA. Again, we agree.
Thus, TCCWNA warranted an award of a civil penalty in favor of the consumers who are members of this class. TCCWNA provides a private cause of action and a remedy for a violation of N.J.S.A. 56:12-15. Pursuant to N.J.S.A. 56:12-17:
Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.
*23 Here, the trial court imposed the minimum civil penalty authorized and declined to exercise its discretion to rescind the contracts. Thus, although we cannot affirm a violation of TCCWNA based upon N.J.S.A. 17:16C-61.6(e), elimination of that violation does not warrant a reduction of the civil penalty, which the court fixed at the minimum amount for a single violation.
UCFSC claims that N.J.S.A. 56:12-15 is void for vagueness, which is an argument that UCFSC did not raise before the trial court. Because of the significance of the issue, we address it despite the fact that it was not raised in the trial court and although it lacks sufficient merit to warrant more than brief discussion. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973); R. 2:11-3(e)(1)(E).
TCCWNA's applicability to the RISA violation at issue here is clear. "[A]ny reasonable person would recognize" that a retail installment sales contract that gives the holder a right to charge a fee not authorized by RISA violates the consumer's "clearly established" right to be free from a contract that permits such a charge. See Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372, 380 (1988). Accordingly, because TCCWNA can be applied in this circumstance, it is not unconstitutionally vague in all of its applications. See ibid. Furthermore, because the statute clearly applies to UCFSC's conduct, UCFSC is not in a position to assert a challenge based on the statute's application in other circumstances. Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458 (1974); State v. Emmons, 397 N.J.Super. 112, 124-25, 936 A.2d 459 (App. Div.2007), certif. denied, 195 N.J. 421, 949 A.2d 849 (2008).

V
UCFSC and the distributors raise two arguments based on the magnitude of the aggregate civil penalty, $1,684,500. We reject them both.

A
UCFSC and the distributors argue that where, as here, the common, typical and predominant claim of the class members is a statutory violation for which a statutory civil penalty will be awarded, a class action is not superior to individual private actions. On that ground they claim error in the denial of their application to decertify the class when its numerosity became clear.
The precedents upon which they rely do not provide persuasive support for their position. In Forman v. Data Transfer, 164 F.R.D. 400, 402-05 (E.D.Pa.1995), the court considered the propriety of a class action as the method for establishing violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C.A. § 227, and obtaining for each member of the class the statutory civil penalty. The court concluded that the individual claims, which required proof that the defendant transmitted an advertisement without the individual recipient's "prior express invitation or permission," did not have the "common nucleus of operative facts" required for a class action. Forman, supra, 164 F.R.D. at 402, 404. Nevertheless, the court went on to observe that authorization of a class action where statutory civil penalties available to many individuals could be aggregated "would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements." Id. at 405.
In support of that observation, the Forman court cited Ratner v. Chemical Bank *24 N.Y. Trust Co., 54 F.R.D. 412, 416 (S.D.N.Y.1972), a case in which the district court denied class certification on the ground that awarding a statutory civil penalty of $100 to each of the 130,000 class members could result in a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant."
Other courts have followed the rationale of Ratner. See Katz v. Carte Blanche Corp., 496 F.2d 747, 770 (3d Cir.) (Aldisert, C.J., dissenting) (discussing frequent application of Ratner in unpublished decisions, criticizing the majority's decision to avoid addressing the issue decided in Ratner and disagreeing with Ratner), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). But, the Federal Court of Appeals for the Second Circuit has taken a different approach and concluded that the problem of enormous awards in class actions based upon aggregation of individual statutory civil penalties should be addressed as a question of excessive damages at the time the penalty is fixed, not at the time of class certification. Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 22 (2d Cir.2003); see also id. at 26-27 n. 4 (Newman, C.J., concurring) (expressly disapproving Ratner).
The Court of Appeals for the Seventh Circuit has disapproved denial of class certification based on the potential for a large award based upon aggregated civil penalties. Murray v. GMAC Mortgage Corp., 434 F.3d 948, 953 (7th Cir.2006). In reversing the denial of class certification on that ground, the court explained that the "reason that damages can be substantial" in class actions to recover civil penalties lies not in the impropriety of a class action but "in the legislative decision to authorize awards as high as $1,000 per person combined with [the civil offender's] decision to" deal with a multitude of persons. Ibid. (citation omitted). The court concluded: "While a statute remains on the books, however, it must be enforced rather than subverted." Id. at 954.
We find that reasoning persuasive. Accordingly, for that reason as well as those stated by the trial court in its decisions of June 23, 2005 and May 30, 2007, we affirm.

B
The second challenge based upon the magnitude of the civil penalty is that it is so disproportionate to the wrong as to amount to a denial of due process. As discussed above, federal courts have recognized that in some cases principles of due process might warrant reduction of a civil penalty on that basis. Ibid.; Parker, supra, 331 F.3d at 22.
The parties do not refer us to any decision in which a court has deemed it appropriate to reduce an award consisting of a multitude of statutory civil penalties entered in a class action. Moreover, in our view the facts of this case do not raise a serious question of unconstitutional excessiveness.
The distributors and UCFSC were in the business of profiting from sales and retail installment sale contracts with consumers, an area of enterprise that is highly regulated. The violation that gave rise to the civil penalty was a contract provision allowing a $20 fee for returned checks clearly prohibited by RISA. The potential to reap a benefit from the unauthorized fee is apparent, and the $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider *25 and give "substantial deference" to judgments made by the Legislature in fixing civil penalties. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 583, 116 S.Ct. 1589, 1603, 134 L.Ed.2d 809, 831 (1996); Baker v. Nat'l State Bank, 353 N.J.Super. 145, 161-62, 801 A.2d 1158 (App.Div.2002). Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class.

VI
Having prevailed on a claim prosecuted on behalf of the class pursuant to TCCWNA, class counsel was entitled to a "reasonable" fee and court costs. N.J.S.A. 56:12-17. Recognizing that fee determinations are disturbed only when there is a clear abuse of discretion, Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001), we conclude that it is appropriate to reverse the counsel fee awarded and remand for reconsideration in light of this decision.
Reconsideration is essential because we have modified the injunctive relief and reversed the trial court's findings of liability on one of the TCCWNA violations. "Under . . . state fee-shifting statutes, the first step in the fee-setting process is to determine the `lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine v. Pantzer, 141 N.J. 292, 334-35, 661 A.2d 1202 (1995). The results obtained are relevant, and reductions based upon the relative significance of successful and unsuccessful claims are appropriate. New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 154, 883 A.2d 329 (2005); Kellam Assocs. v. Angel Projects, 357 N.J.Super. 132, 142, 814 A.2d 642 (App.Div.2003); Silva v. Autos of Amboy, Inc., 267 N.J.Super. 546, 556-57, 632 A.2d 291 (App.Div.1993). In fixing the lodestar, the trial court considered class counsel's overall success, but this decision alters that analysis.
In addition, we cannot affirm the fifty-percent enhancement of the lodestar awarded by the trial court. Under the guidelines established by the Supreme Court in Rendine, a fee enhancement "ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." 141 N.J. at 343, 661 A.2d 1202. The "justification for enhancement is . . . [that] the lodestar amount is not a reasonable fee to be charged to the non-prevailing party because it does not reflect the risk of nonpayment." Id. at 341, 661 A.2d 1202. The significance of the public interest in pursuit of the claims is also relevant to the enhancement, id. at 343, 661 A.2d 1202, because a statutory fee and the enhancement are "provided, as a policy matter in specific types of cases, to remedy the problem of unequal access to the courts." Baker, supra, 353 N.J.Super. at 161, 801 A.2d 1158.
Consideration of those factors does not warrant a fee beyond the "typical" and at the top of the ordinary range. As UCFSC notes, the legal risk of continued representation of the class on these claims was virtually non-existent after May 21, 2004, the date on which summary judgment in favor of Carbo on his individual claims under RISA, DDRISA and TCCWNA and the preliminary injunction were entered. Furthermore, from that point forward it appears that little time was spent on claims that were successful. Ultimately, the additional efforts failed not because of the novelty of issues implicating important matters of public interest but *26 because no member of the class suffered an ascertainable loss required for imposition of liability under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. Relevant to the importance of the public's interest in pursuit of the claims established, the DDRISA violations demonstrated were not of a nature that had the capacity to seriously undermine the central purpose of DDRISA's "cooling-off period."
For the foregoing reasons, we reverse the fee and remand for reconsideration in conformity with this decision. Because the award of fees on appeal should abide those determinations by the trial court, we also refer the determination of fees on appeal to that court in accordance with Rule 2:11-4.

VII
We conclude by identifying several issues we have not addressed and indicating our reasons for rejecting the arguments presented.
Substantially for the reasons stated in the trial court's written decision of May 30, 2007, we affirm the dismissal of the class claims for relief based upon alleged violations of the CFA, breach of contract and breach of the covenant of good faith and fair dealing, as well as the denial of a class-wide rescission remedy and a permanent injunction against enforcement of these contracts. The arguments presented to establish error in those determinations lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).
We also reject the class's claim that the trial court erred in denying pre-judgment interest on the civil penalty. Because the award is for a civil penalty based on the content of the contract, pre-judgment interest was not mandated pursuant to Rule 4:42-11(b), and there is no basis for concluding that the trial court abused its discretion in denying that relief. See County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61, 891 A.2d 600 (2006); In re Estate of Lash, 169 N.J. 20, 34, 776 A.2d 765 (2001). In its argument on the equities relevant to pre-judgment interest, the class overlooks the fact that during the life of the preliminary injunction its members had use of the Kirbys they purchased, and under the judgment the class members will not be required to pay the interest due on those contracts while that injunction was in place.
The trial court's decision to deny post-judgment interest is in a different posture. Post-judgment interest is generally available pursuant to Rule 4:42-11(a). See Bd. of Educ. of City of Newark, Essex County v. Levitt, 197 N.J.Super. 239, 244-45, 484 A.2d 723 (App.Div.1984). Because the basis for the court's decision to deny post-judgment interest is not sufficiently explained to permit our review, R. 1:7-4, we reverse and remand for reconsideration. Moreover, it is not entirely clear to us whether the court intended to revisit that issue. See Baker, supra, 353 N.J.Super. at 176-77, 801 A.2d 1158 (discussing a court's discretion to stay accrual of post-judgment interest in some circumstances).
We also reject the claim that the court erred in foreclosing the collection of interest by UCFSC and the distributors during the period of the preliminary injunction restraining enforcement of the contracts. That order is affirmed substantially for the reasons stated in the trial court's written opinion of May 30, 2007. The other arguments presented by UCFSC and the distributors to establish error in the trial court's determinations warrant no discussion. R. 2:11-3(e)(1)(E).
Affirmed in part; reversed in part and remanded for further proceedings in conformity with this decision.
NOTES
[1] The class, as finally defined by the trial court, includes those who entered into these contracts with the various distributors between June 16, 1996 and December 23, 2004.
[2] As a consequence of orders of this court dated August 2, 2007, the orders of March 9, May 30 and June 6, 2007 are stayed pending appeal.
[3] The "second amended decision" of May 30, 2007, includes revisions to the court's opinions issued on March 9 and March 19, 2007 that were made following motions for reconsideration.
[4] This view on preemption was initially stated by agency decision in the Advisory Opinion cited above. 16 C.F.R. § 429.2 was adopted effective in 1995. 60 Fed.Reg. at 54180.
[5] Moreover, as the trial court observed in its opinion of May 30, 2007, application of N.J.S.A. 17:16C-61.6(e) to the entire contract also creates a conflict with 16 C.F.R. § 433.2(a).