NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2085
_____

SHARON MCGARVEY; BRYAN BECHTEL;
KATIE MCGARVEY, on behalf of themselves
and all others similarly situated,
Appellants

v.

PENSKE AUTO GROUP, INC.; UNITED AUTOCARE PRODUCTS, INC.;
UNITED AUTOCARE, INC.; INNOVATIVE AFTERMARKET SYSTEMS, L.P.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-08-cv-05610)
District Judge:  Honorable Jerome B. Simandle
_____

Argued May 15, 2012
Before:  SMITH, FISHER and GARTH, *Circuit Judges*.

(Filed: July 2, 2012  )

Leonard W. Aragon
Robert B. Carey
Hagens Berman Sobol Shaprio
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003

Patrick Howard
Charles J. Kocher
Simon B. Paris (Argued)
Saltz, Mongeluzzi, Barrett & Bendesky
1650 Market Street
One Liberty Place, 52nd Floor

Philadelphia, PA 19103
    *Counsel for Appellants*

Daniel E. Brewer
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square, Suite 2000
Philadelphia, PA 19103

Mary E. Kohart (Argued)
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive
Suite 300, Union Meeting Corporate Center V
Blue Bell, PA 19422

Aimee L. Kumer
Elliott Greenleaf & Siedzikowski, P.C.
50 South 16th Street
Suite 2960, Two Liberty Place
Philadelphia, PA 19103
        *Counsel for Penske Auto Group,*
        *United Autocare Products, Inc.*
        *and United Autocare, Inc.*

Douglas A. Albritton
Reed Smith
10 South Wacker Drive, 40th Floor
Chicago, IL 60606

John J. Hare (Argued)
Keith D. Heinold
Kevin M. McKeon
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103
        *Counsel for Innovative Aftermarket*
        *Systems LP*

_____

OPINION OF THE COURT

_____

2

FISHER, *Circuit Judge*.

Sharon McGarvey, Katie McGarvey, and Bryan Bechtel (collectively, "Plaintiffs") appeal both the District Court's dismissal of their First Amended Complaint for failure to state a claim as well as its denial of their motion for leave to amend. Plaintiffs filed a putative class action in the U.S. District Court for the District of New Jersey against Penske Auto Group, Inc. ("PAG"), United Autocare Products, Inc. ("UAP"), United Autocare, Inc. ("UA"),[1] and Innovative Aftermarket Systems ("IAS") (collectively, "Defendants"), alleging the Defendants created a tying arrangement that violated federal and state laws. For the reasons stated below, we will affirm the District Court's order.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This case involves the sale of the Ibex Anti-Theft Etch System ("Ibex System") to purchasers of automobiles. The Ibex System was manufactured by IAS, distributed to dealerships by UAP and UA, and sold by automobile dealerships owned by PAG. The Ibex was comprised of two components. First, the Ibex included an Etch Code, which was a unique serial number, placed onto the primary windows of the vehicle, that was

---

[1] Defendants submit that the party's correct name is United Autocare, LLC, not United Autocare, Inc. as named in the caption.

registered for later searches if necessary. Because a vehicle's glass is one of the most

valuable items for a thief to remove from a stolen vehicle for resale, the Etch Code was

designed to help deter theft by making the glass unmarketable. Second, the Ibex included

a Limited Warranty, which provided a credit reimbursement in the amount of $2,500,

$5,000, or $7,500 if the consumer purchased a replacement vehicle after the original

vehicle was stolen. The Limited Warranty contract reads, in pertinent part:

> "In the event the Ibex Anti-Theft Etch System fails to prevent the Vehicle specified in this Limited Warranty from being stolen within the Warranty Period, and such failure results in the Customer's primary insurance company declaring the Vehicle a Total Loss as a direct result of theft, we will provide the customer with a replacement vehicle, by issuing at the dealership listed in this Warranty, a credit in the name of the Customer (up to ___ $2,500 or ___$5,000 or ___$7,500 check one) to be applied towards the purchase of the replacement vehicle.
> The customer is obliged to utilize the total benefit provided to replace the Vehicle specified in the Warranty and the replacement Vehicle must be of equal or greater value than the original purchase price paid for the covered Vehicle."

In November 2008, Plaintiffs filed a putative class action in the U.S. District Court

for the District of New Jersey, alleging that Defendants violated the Magnuson-Moss

Warranty Act ("MMWA"), 15 U.S.C. § 2302(c), the New Jersey Truth-in-Consumer

Contract, Warranty, and Notice Act ("NJTCCA"), N.J. Stat. Ann. § 56:12-15, New Jersey

common law, and the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-

2. On June 29, 2009, the District Court dismissed the Plaintiffs' MMWA claim on the

ground that they failed to allege actual damages as required under the statute. *McGarvey*

*v. Penske Auto. Grp., Inc. (McGarvey I)*, 639 F. Supp. 2d 450, 457 (D.N.J. 2009), *vacated*

4

*in part by McGarvey v. Penske Auto. Grp., Inc. (McGarvey II)*, No. 08-5610, 2010 WL 1379967, at \*2 (D.N.J. Mar. 29, 2010). [2] But the District Court held that Plaintiffs sufficiently stated a NJTCCA claim, even in the absence of actual damages, because they were able to show that the Limited Warranty violated a clearly established legal right under the MMWA. *Id.* at 458. [3] Specifically, the Court found that the Ibex System's tying of the warranty benefit, *i.e.*, credit reimbursement, to a consumer's purchase of a replacement vehicle at a particular dealership violated a consumer's clearly established legal right under the MMWA to be free from warranties that are conditioned on the consumer's use of a specific article or service. *Id.* at 463. [4] In addition, the Court held that Plaintiffs stated a claim for unjust enrichment under New Jersey common law but failed to state a claim under the CFA. *Id.* at 465-66.

---

[2] The District Court held that the statute required a showing of actual damages based on a reading of the following provision: "a consumer who is *damaged* by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter . . . may bring suit for damages and other legal and equitable relief[.]" 15 U.S.C. § 2310(d)(1) (emphasis added). This portion of the District Court's opinion was not subsequently vacated.

[3] The NJTCCA prohibits sellers from offering any written consumer warranty that "includes a provision that violates any clearly established legal right . . . as established by State or Federal law at the time the offer is made[.]" N.J. Stat. Ann. § 56:12-15.

[4] Under the MMWA, "[n]o warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name[.]" 15 U.S.C. § 2302(c).

5

After *McGarvey I*, Plaintiffs filed their First Amended Complaint, maintaining the NJTCCA and common law unjust enrichment claims, while adding a claim for a declaratory judgment that the Limited Warranty contracts were void and unenforceable. Next, Defendants filed a motion for reconsideration of the District Court's June 29, 2009 order. On reconsideration, the District Court held that, contrary to its earlier holding, Plaintiffs did not allege sufficient facts to show that the Limited Warranty violated consumers' clearly established right under § 2302(c) of the MMWA and thus failed to state a claim under the NJTCCA. *McGarvey II*, 2010 WL 1379967, at *6-9.

In response to *McGarvey II*, Plaintiffs filed a motion for leave to file a Second Amended Complaint. *McGarvey v. Penske Auto. Grp., Inc. (McGarvey III)*, No. 08-5610, 2011 WL 1325210, at *3 (D.N.J. Mar. 31, 2011). The District Court denied the motion on the basis that any amendment would be futile and could not state a claim under the NJTCCA, the Declaratory Judgment Act, or the common law theory of unjust enrichment. *Id.* at 1. The District Court then granted the Defendants' motion to dismiss the First Amended Complaint. *Id.* Plaintiffs filed a timely appeal.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(d). We have appellate jurisdiction under 28 U.S.C. § 1291.

"[W]e review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007) (citation omitted). At this stage, we must accept

all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).

We review the District Court's denial of a party's request for leave to file an amended complaint for abuse of discretion. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (citation omitted). "Under Federal Rule of Civil Procedure 15(a), leave to amend should be freely given when justice so requires[.]" *Id.* at 144 n.10 (internal quotation marks omitted). But a district court may deny the motion if the amendment would be futile. *Phillips*, 515 F.3d at 228 (citation omitted).

## III.

## A.

The NJTCCA prohibits sellers from offering any written consumer warranty that "includes a provision that violates any clearly established legal right . . . as established by State or Federal law at the time the offer is made[.]" N.J. Stat. Ann. § 56:12-15. Plaintiffs contend that the Defendants violated the NJTCCA by offering the Limited Warranty, which contains tie-in provisions that violate their clearly established legal right under the MMWA. We disagree because Plaintiffs' right in question was not clearly established at the time the Limited Warranty was offered.

When interpreting the NJTCCA, we "construe the statute as we believe the New Jersey Supreme Court would construe it." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). We first look to the language of the statute, and if

7

the statute is clear and unambiguous on its face, then we enforce the statute as written. *See id.* at 323-24 (citation omitted). "If the language of the statute is ambiguous, courts may look to the statute's history, policy, purpose, and other extrinsic aids to ascertain statutory intent." *Id.* at 324. Here, the term "clearly established legal right" is not clear and unambiguous. The phrase does not indicate in what circumstances a consumer's legal right is established, nor does it define what it means for the right to be *clearly* established. Nothing in the NJTCCA defines this term or aids in giving it meaning. Thus, we look to extrinsic aides, like the statute's legislative history and State case law, which lead us to conclude that the consumers' legal right in this case was not "clearly established" under the NJTCCA. Even without defining the specific definition of "clearly established legal right," we are convinced that whether the Limited Warranty violates the MMWA, and consequently whether consumers had a right to be free from warranties like the Limited Warranty, is significantly less clear compared to the violations of rights that were previously found to be sufficient to state a NJTCCA claim.

First, the Assembly Statement in support of the NJTCCA's passage lists provisions that the Legislature considered to "clearly violate the rights of consumers." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2-3

8

("Assembly Statement"). [5] At the time the NJTCCA was first introduced on May 1, 1980, these listed provisions, including a consumer's complete waiver of damages resulting from a seller's liability, infringed on rights that had been long-recognized in common law. *See*, *e.g.*, *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 115 (1955) (acknowledging "a longstanding admiralty rule, based on public policy, [that] invalidat[es] contracts releasing towers from all liability for their negligence."); *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* 351 F.2d 253, 256 (9th Cir. 1965), *cert. denied*, 383 U.S. 936 (1966) (holding indemnity contract provision relieving party of any damages, even in the case of its own negligence, to be unenforceable because it would be contrary to public policy).

Next, the two cases in which the New Jersey Superior Court held that the plaintiffs sufficiently stated a NJTCCA claim also involved alleged wrongdoing that fell squarely within prohibited conduct under state or federal law. In *Bosland v. Warnock Dodge, Inc.*,

---

[5] "Examples of such provisions are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability. Other provisions claim that a lessor has the right to cancel the consumer contract without cause and to repossess its rental equipment from the consumer's premises without liability for trespass. Still other provisions arbitrarily assert the consumer cannot cancel the contract for any cause without punitive forfeiture of deposits and payment of unfounded damages. Also, the consumer's rights to due process is often denied by deceptive provisions by which he allegedly waives his right to receive legal notices, waives process of law in the repossession of merchandise and waives his rights to retain certain property exempted by State or Federal law from a creditor's reach." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2-3.

9

the complaint alleged that the seller failed to itemize a documentary service fee that was included in the vehicle registration fee, when the state automotive sales practices regulation explicitly deemed it "'unlawful'" to "'charg[e] . . . a consumer monies, or any other thing of value, in exchange for the performance of any documentary service without first itemizing the actual documentary services which is being performed[.]'" 933 A.2d 942, 945-46 (N.J. Super. Ct. App. 2007) (quoting N.J. Admin. Code § 13:45A-26B.2(a)(2)(i)). In *United Consumer Financial Services Company v. Carbo*, form contracts provided by a finance company to vacuum cleaner distributors allowed sellers to charge a fee of $20 if a check was returned for any reason, when the Retail Installment Sales Act only authorized a fee "'if a check of the buyer is returned to the holder uncollected due to insufficient funds in the buyer's account.'" 982 A.2d 7, 22 (N.J. Super. Ct. App. 2007) (citing N.J. Stat. Ann. § 17:16C-42(e)).

In contrast, whether the Limited Warranty violates a consumer's legal right under § 2302(c) of the MMWA is significantly less clear. The critical language in the MMWA states that a warrantor shall not condition its warranty "on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302(c). But the statute fails to define what it means to use an article or service "in connection with such product" or specify whether "using in connection with" applies to parts or services that the consumer must pay for in the process of redeeming the warranty benefits, which is at issue here.

10

Other sources that typically aid in interpreting the statute are equally unhelpful. The MMWA's legislative history and Federal Trade Commission ("FTC") Guidelines suggest that the MMWA prohibits tying arrangements for articles or services that are *unrelated* to redeeming the warranty benefit.[6] However, as in cases like this one where the condition applies to parts or services that the consumer must pay for in the process of redeeming the warranty benefit, it is unclear whether the prohibition of tying arrangements applies. According to the FTC Guidelines, when a warranty covers only the replacement of parts but not the labor charges to install those parts, § 2302(c) prohibits warrantors from specifying the service or labor consumers must use to install the replacement parts. 16 C.F.R. § 700.10(b). However, the FTC's subsequent Opinion Letter suggests that in certain cases where the warrantor pays a portion of the labor cost under the warranty, it may specify the labor service to be used. Donald S. Clark, Federal Trade Commission, Nat'l Indep. Auto. Dealers Assoc. Response Letter (Dec. 31, 2002) ("Opinion Letter").

Although both parties rely heavily on the FTC's Opinion Letter to support their respective positions, the Letter ultimately fails to indicate whether the Limited Warranty violates a consumer's legal right under § 2302(c) of the MMWA. The FTC's position is

---

[6] For example, an automobile manufacturer may not require the consumer to regularly use a certain brand of motor oil as a condition of redeeming warranty repairs. *See* H.R. Rep. 93-1107 (1974). Nor can a manufacturer require the use of specific repair services for non-warranty maintenance as a condition of redeeming warranty repairs. 16 C.F.R. § 700.10(c).

that in the case of 50/50 warranties, where a warrantor pays 50% of the labor cost and 50% of the cost for parts with respect to covered repairs, warrantors are permitted to specify the labor service to be used. A tie-in provision in such cases does not violate the MMWA because the warranted repair work cannot be severed into the part that the warrantor can perform and the part that another repair shop can perform. Thus, the warranting dealer, who pays a proportion of the repair costs, "has a direct interest in providing the warranty service for which it is partly financially responsible." *Id.* The Limited Warranty here is similar in that the warrantor shares in the cost of the consumers' replacement vehicle and thus arguably has an interest in specifying the conditions of the consumers' purchase. However, unlike the warrantor's 50% payment of the repair cost under the 50/50 warranty, the warrantor's payment of the credit reimbursement here is a pre-determined, fixed amount that could remain unaffected by, and is potentially severable from, the purchase of the replacement vehicle.

In the end, our analysis demonstrates that whether the Limited Warranty violates a consumer's right under § 2302(c) of the MMWA is significantly less clear than the violations of long-established common law listed in the Assembly Statement as well as the violations of law found sufficient to state a NJTCCA claim in *Bosland* and *United Consumer Financial Services Company*. Regardless of what the New Jersey Legislature specifically intended "clearly established legal right" to mean, it was not intended to include the types of right at issue here, where the violation of the right is unclear. Therefore, we hold that the consumers' right to be free from warranties like the Limited

12

Warranty was not clearly established under the MMWA.[7]  Accordingly, the District

Court did not err in dismissing Plaintiffs' NJTCCA claim.  For the same reason, any

amendment to the complaint would have been futile in establishing the claim, so the

District Court did not abuse its discretion in denying the Plaintiffs' motion for leave to

amend.[8]

B.

In the District Court, Plaintiffs sought a declaratory judgment voiding the Limited

Warranty contract and submitted an unjust enrichment claim under New Jersey common

law, arguing that the Defendants should return to the Plaintiffs the value paid for the Ibex

System.  Plaintiffs presumably sought the declaratory judgment voiding the contract

because their unjust enrichment claim cannot stand as long as the parties' relationship is

governed by an existing contract.  *Kas Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387, 392

---

[7] We decline to define the precise contours of the term "clearly established legal right" because principles of comity counsel us to refrain from leading the state courts in the interpretation of state law when it is unnecessary to the resolution of the matter before us.  *See Manning v. Princeton Consumer Discount Co.*, 380 F. Supp. 116, 120 (E.D. Pa. 1974).

[8] Even if we were to hold that the Limited Warranty violated the MMWA, this would only indicate that the consumers had a legal right to be free from such warranties. It would not necessarily mean that the right was *clearly* established under the MMWA. Interpreting the NJTCCA to apply equally to violations of a legal right and violations of a clearly established legal right would fail to give the phrase "clearly established" any meaning and render it superfluous.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) (Courts should construe statutes "so as to avoid rendering superfluous" any statutory language.).  Thus, Plaintiffs must show something more than a post hoc judicial recognition of their right in order to prove that the right was clearly established.  Their failure to do so would also lead us to reject their NJTCCA claim.

13

(N.J. Super. Ct. App. 2007). Because we hold that the Limited Warranty did not violate the consumer's clearly established legal right under the MMWA and thus, did not violate the NJTCCA, *see supra* Part III.A., Plaintiffs were not entitled to a declaratory judgment voiding the Limited Warranty contract. And without a declaratory judgment voiding the contract, Plaintiffs' unjust enrichment claim must also necessarily fail. Therefore, the District Court properly dismissed both claims and did not abuse its discretion in denying the motion for leave to amend.

IV.

For the reasons set forth above, we will affirm the District Court's order.