NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2662-18T1

ELLEN BASKIN, KATHLEEN
O'SHEA, and SANDEEP TRISAL,
on behalf of themselves and all
others similarly situated,

> APPROVED FOR PUBLICATION
>
> March 2, 2020
>
> APPELLATE DIVISION

    Plaintiffs-Appellants,

v.

P.C. RICHARD & SON, LLC,
d/b/a P.C. RICHARD & SON,
and P.C. RICHARD & SON, INC.,
d/b/a P.C. RICHARD & SON,

    Defendants-Respondents.

_____

Argued January 22, 2020 – Decided March 2, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-0911-18.

Chant Yedalian (Chant & Company) of the California
Bar, admitted pro hac vice, argued the cause for
appellants (Lite De Palma Greenberg LLC, and Chant
Yedalian, attorneys; Bruce Daniel Greenberg and
Chant Yedalian, on the briefs).

William Stephen Gyves argued the cause for
respondents (Kelley Drye & Warren LLP, attorneys;

William Stephen Gyves, Glenn T. Graham, and Robert Nicholas Ward, on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

Plaintiffs Ellen Baskin, Kathleen O'Shea, and Sandeep Trisal commenced this putative class action matter, asserting claims against defendants, P.C. Richard & Son, LLC and P.C. Richard & Son, Inc.,[1] under the Fair and Accurate Credit Transactions Act (FACTA) of 2003, 15 U.S.C. §§ 1681 to 1681x, which prohibits retailers who accept credit or debit cards from printing more than the last five digits of the card number or expiration date upon any receipt. We affirm the trial court's order finding that plaintiffs failed to establish that a class action was the superior means to resolve the claims, as required by Rule 4:32-1(b)(3).

We also affirm the trial court's order insofar as it dismissed the claims advanced by O'Shea and Trisal because they are New York residents and their claims arise out of sales transactions that occurred in New York. However, we reverse and remand the dismissal of the complaint as to Baskin because she is a New Jersey resident and her individual claim arises out of a transaction that occurred in this State.

---

[1] We refer to P.C. Richard & Son, LLC and P.C. Richard & Son, Inc. collectively as "defendants."

2

I.

We discern the following facts from the motion record. O'Shea and Trisal initially filed their complaint as a class action lawsuit in the Southern District of New York in 2015.[2] The New York complaint alleged O'Shea and Trisal received receipts from one of defendants' New York stores around November 17, 2013 and on May 2, 2016 respectively, which included their credit or debit card's expiration dates and the last four digits[3] of their card numbers in violation of FACTA. O'Shea and Trisal claimed defendants' FACTA violations were willful because defendants:

> 1) knew of and were well informed about the law;
>
> 2) were informed by other entities of FACTA's truncation requirements and the prohibition on expiration dates;
>
> 3) knew their electric receipt printing equipment was outdated, but [decided to forgo] proper updates to avoid spending the money, time, and other resources required; and

---

[2] O'Shea v. P.C. Richard & Son, LLC, No. 15 Civ. 9069, 2017 U.S. Dist. LEXIS 122424, at *2 (S.D.N.Y. Aug. 3, 2017).

[3] Plaintiffs alleged only the last four digits of their card numbers were disclosed, not five digits. Instead, their primary contention is defendants unlawfully printed the expiration dates of their cards on store receipts.

A-2662-18T1

4) were put on notice of their FACTA violations by [p]laintiff O'Shea's letter and [c]omplaint.[4]

O'Shea and Trisal further alleged that printing their card expiration dates subjected them to "an increased risk of identity theft and credit [and/or] debit card fraud," even though neither one of them suffered identity theft or fraud. Defendants filed a motion to dismiss the federal action, which was granted. The federal court found O'Shea and Trisal could not prove a material risk of harm and therefore, they lacked standing to assert FACTA claims against defendants.

O'Shea and Trisal joined Baskin in filing the complaint under review in the Law Division on April 27, 2018. Baskin alleged in her complaint that she received two credit/debit card receipts from defendants "on May 24, 2016[,] each of which contained, among other things, [her] card's expiration date, the last four digits of her card number, the brand of her card, her full name, her full physical address, and her telephone number[,]" from one of defendants' retail stores located in Brick.[5] Additionally, Baskin alleged she was exposed

---

[4] O'Shea served affidavits with a cease and desist letter on November 2, 2015 demanding that defendants comply with FACTA. A draft copy of the complaint was attached to the letter.

[5] 15 U.S.C. § 1681c(g)(1) provides: "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last [five] digits of the card

to an increased risk of identity theft and credit/debit card fraud, although she did not sustain any such damages.

The class plaintiffs sought to represent was described as: "All consumers to whom [d]efendants, after November 17, 2013, provided an electronically printed receipt at the point of a sale or transaction at any of [d]efendants' physical store locations, on which receipt [d]efendants printed the expiration date of the consumer's credit card or debit card." The complaint alleged:

> Defendants have willfully violated [FACTA] and failed to protect [p]laintiffs and others similarly situated against identity theft and debit card fraud by printing the expiration date of the card and the last four digits of the card number on receipts provided to credit card and debit card cardholders transacting business with [d]efendants. This conduct is in direct violation of FACTA.

Defendants filed a motion to dismiss on September 5, 2018, claiming plaintiffs could not satisfy the requirements for class action certification, and that New Jersey courts lacked personal jurisdiction over them in this matter. In support of their motion to dismiss, defendants also argued plaintiffs' New Jersey action was an attempt at "a second bite [of] the FACTA class action apple." Specifically, defendants contend that the federal court dismissed O'Shea and Trisal's complaint because the alleged FACTA violations were

number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." (Emphasis added).

technical in nature and did not result in actual injury. Similarly, in this case, defendants contend that plaintiffs did not sustain any harm, such as identity theft, credit or debit card fraud, or that any third party ever came into possession of the sales receipts or credit card information. Defendants argued that under New Jersey law, technical violations of FACTA should not be adjudicated as a class action. They therefore sought to have plaintiffs' complaint dismissed.

Plaintiffs opposed the motion. On November 30, 2018, the trial court conducted oral argument on defendants' motion to dismiss. The court addressed the motions in a written opinion dated January 17, 2019. The court determined, "certifying a class for these [p]laintiffs—persons who have alleged no concrete harm and yet are seeking a robust remedy in the form of a class action suit for technical violations of a federal statute—would be contrary to relevant New Jersey law."

Accordingly, the trial court concluded that plaintiffs failed to satisfy the numerosity requirement under Rule 4:32-1(a) because they did not assert a potential class number "except to contend that there could be 'thousands of people whose credit card information was exposed on improper receipts.'" Additionally, the court stated "[p]laintiffs have also not provided sufficient

6

evidence to support a claim that the class is so numerous that joinder of all members is impracticable . . . ."

In finding plaintiff failed to establish any harm, the trial court stated:

> Plaintiffs allege that it is the violation of FACTA itself that has caused damage to the consumer, but [p]laintiffs fail to allege that they were victims of identity theft, credit or debit card fraud, or that any third party ever came into possession of the sales receipts or the credit card information contained on the receipts, which puts [p]laintiffs' claims at odds with the legislative purpose of FACTA and points to an overall lack of demonstrable damages in the case of these particular [p]laintiffs. As a result, the alleged liability of [d]efendants would need to be determined on the facts on an individual basis, especially if other consumers who received the allegedly violative receipts actually were victims of identity theft or other instances of fraud.

In addition, the trial court found New Jersey lacked personal jurisdiction over O'Shea and Trisal's claims because they are New York residents, P.C. Richard & Son, LLC, is a New York limited liability company, and P.C. Richard & Son, Inc., is a Delaware corporation, having a principal place of business in New York. The court further reasoned that since defendants maintained their principal place of business in New York, the court had no basis to exercise personal jurisdiction over defendants with regard to the claims asserted in the complaint. On January 17, 2019, the court entered a

7

memorializing order granting defendants' motion to dismiss as to all three plaintiffs.

On appeal, plaintiffs argue that: (1) the trial court erred in finding that plaintiffs could not meet the requirements of class certification under Rule 4:32-1; (2) the trial court erred in finding that plaintiffs could not satisfy the predominance or superiority requirements of Rule 4:32-1(b)(3) and the numerosity requirement of Rule 4:32-1(a); (3) the trial court erred in dismissing the action in its entirety; and (4) the trial court erred in finding it lacked personal jurisdiction over defendants.

## II.

We begin by addressing plaintiffs' contention that the trial court erred by finding that class certification is not the superior means of adjudicating the technical violations of FACTA alleged in the complaint, an issue that the New Jersey courts have not yet addressed. In reviewing the grant or denial of a class action certification, an appellate court must ascertain whether the trial court followed the applicable standards set forth in Rule 4:32-1 and whether it abused its discretion in doing so. Lee v. Carter-Reed Co., 203 N.J. 496, 505 (2010).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested

on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). In determining whether the trial court has abused its discretion, we "'must ascertain whether the trial court has followed' the class action standard set forth in Rule 4:32-1." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017) (quoting Lee, 203 N.J. at 506).

In order to proceed as a class action, plaintiffs must satisfy the general prerequisites of Rule 4:32-1(a), which state:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [Ibid.]

These four prerequisites are commonly "referred to as 'numerosity, commonality, typicality, and adequacy of representation.'" Laufer v. U.S. Life Ins. Co. in the City of New York, 385 N.J. Super. 172, 180 (App. Div. 2006).

Plaintiffs that satisfy subsection (a) of Rule 4:32-1 must also fulfill one of the three requirements of subsection (b), which examine the interests of the class members and the "effect of class certification on efficient judicial

management . . . ." <u>Myska v. N.J. Mfrs. Ins.</u>, 440 N.J. Super. 458, 475 (App. Div. 2015) (quoting <u>In re Cadillac V8-6-4 Class Action</u>, 93 N.J. 412, 436 (1983)).

<u>Rule</u> 4:32-1(b) states that a class action may be certified if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk either of:
>
>> (A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

"In short, 'the movant must demonstrate both the predominance of the common issues and the "superiority" of a cause of action over other available trial techniques.'" Myska, 440 N.J. Super. at 475 (quoting Saldana v. City of Camden, 252 N.J. Super. 188, 196 (App. Div. 1991)).

On appeal, plaintiffs argue that the trial court erred by denying class certification. Plaintiffs contend that the court erred by finding that they did not satisfy the superiority and predominance requirements of Rule 4:32-1(b)(3). They also contend that the court erred by dismissing the matter at the pleading stage. We disagree. We conclude that the trial court properly applied the requirements in Rule 4:32-1 and did not err by denying class certification at the pleading stage.

In this case, plaintiffs are asserting claims under FACTA. The purpose of FACTA "is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, § (2)(b), 121 Stat. 1565, 1566 (2008). The Act's further purpose is "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Id. at § (2)(a)(1), 121 Stat. at 1565.

A. Numerosity

Although plaintiffs argue that the trial court erred in declaring that they did not establish the numerosity requirement of Rule 4:32-1(a), the federal courts indicate that "[a]s a general rule, . . . classes of [twenty] are too small, classes of [twenty to forty] may or may not be big enough depending on the circumstances of each case, and classes of [forty] or more are numerous enough[,]" to satisfy the numerosity factor for class actions. In re Toys "R" Us, 300 F.R.D. 347, 367-68 (C.D. Cal. 2013) (quoting Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal 1988)). Plaintiffs failed to name the number of potential class members, and only vaguely stated that there could be "thousands of people whose credit card information was

exposed on improper receipts." Because plaintiffs here failed to sufficiently articulate the size of the class, they did not meet this prerequisite to forming a class action.

B. Superiority

Analysis of the superiority requirement "necessarily implies a comparison with alternative procedures, and mandates assessment of the advantages and disadvantages of using the class[]action device in relation to other methods of litigation." Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc., 421 N.J. Super. 268, 275-76 (App. Div. 2011) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 114 (2007)).

Recognizing that there is no controlling precedent on FACTA class action claims in New Jersey, the trial court applied the reasoning in Local Baking to the current case. In Local Baking, we granted the defendant's motion to dismiss an action brought under the Telephone Consumer Protection Act (TCPA) of 1991, 47 U.S.C. § 227, which prohibits the use of facsimile machines, computers, or other devices to send unsolicited advertisements. Id. at 271.

The TCPA allows a claimant to recover actual damages, or $500 for each technical violation of the Act, whichever is greater. 47 U.S.C. § 227(b)(3). In determining whether the plaintiffs met the superiority prong of Rule 4:32-

1(b)(3), we held that "a class action suit is not a superior means of adjudicating a TCPA suit[,]" agreeing with the trial court's analysis that small claims courts eliminate the need for class action treatment of TCPA claims. Local Baking, 421 N.J. Super. at 280.

On appeal, plaintiffs argue that Local Baking is inapposite because the TCPA does not require a violation to be willful in order to seek recovery under the TCPA. However, FACTA provides for attorney fee-shifting, thereby indicating that Congress did not intend for such claims to be brought by pro se litigants in small claims courts. Moreover, plaintiffs argue that FACTA allows for claims to be brought for willful and negligent violations of the law.

15 U.S.C. § 1681n(a) authorizes claimants to recover for any willful violation of the act "in an amount equal to the sum of[:]"

> (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than [$1000]; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or [$1000], whichever is greater;
>
> (2) such amount of punitive damages as the court may allow; and

14

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together <u>with reasonable attorney's fees</u> as determined by the court.

[(Emphasis added).]

15 U.S.C. § 1681o provides, regarding negligent noncompliance:

(a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this title . . . with respect to any consumer is liable to that consumer in an amount equal to the sum of[:]

(1) any <u>actual damages</u> sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together <u>with reasonable attorney's fees</u> as determined by the court.

[(Emphasis added).]

In comparing FACTA with the TCPA, the former, according to 15 U.S.C. §1681n(a)(1)(A), limits plaintiffs' claims to $1000 individually, allowing them to recover in our small claims section, where the jurisdictional limit is $3000.  <u>See</u> <u>R.</u> 6:1-2(a)(2).  In the <u>Local Baking</u> analysis of the TCPA, we noted that "by imposing a statutory award of $500, a sum considerably in excess of any real or sustained damages, Congress has presented an aggrieved party with an incentive to act in his or her own interest without the necessity of class action relief."  421 N.J. Super. at 280.

The reasoning in <u>Local Baking</u> applies here, because the $1000 damage limit for willful violations of FACTA is comparable to the limited damages available under the TCPA. As we noted in <u>Local Baking</u>, litigants can file complaints in the small claims court, and they can do so without an attorney. <u>Ibid.</u> An answer is not needed, and the trial court can address the complaint promptly. <u>Ibid.</u>

We further concluded that "[t]he combination of the TCPA's design and New Jersey's procedures suggests that the benefit of a class action has been conferred on a litigant by the very nature of the procedures employed and relief obtained. The cost of litigating for an individual is significantly less than the potential recovery." <u>Id.</u> at 280-81.

Plaintiffs argue, however, that the potential to recover punitive damages under 15 U.S.C. § 1681n(a)(2) elevates their FACTA claims beyond the jurisdictional limit of small claims court because discovery and witnesses would be necessary in order to determine punitive damages. Plaintiffs also assert that litigants may file in small claims court "without an attorney," but the potential allowance for attorney's fees and punitive damages removes FACTA claims from the small claims court $3000 jurisdictional recovery limit.

We are also mindful of our decision in <u>United Consumer Fin. Servs. Co. v. Carbo</u>, 410 N.J. Super. 280, 294 (App. Div. 2009). In that case, we concluded that a class action was the superior method of adjudicating claims alleging violations of the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. §§ 56:12-14 to -18. <u>Carbo</u> involved 16,845 class members, who were each awarded a civil penalty of $100, for an aggregate civil penalty of $1,664,500. <u>Carbo</u>, 410 N.J. Super. at 292, 308.

The issue in <u>Carbo</u>, however, was whether class certification should be denied because "the potential for a large award [was] based upon aggregated civil penalties." <u>Id.</u> at 309. Accepting reasoning from the federal courts, we declined to allow dismissal of the class action on such a theory. <u>Ibid.</u>; <u>see</u> <u>Murray v. GMAC Mortg. Corp.</u>, 434 F.3d 948, 953 (7th Cir. 2006); <u>Parker v. Time Warner Entm't Co.</u>, 331 F.3d 13, 22 (2d. Cir. 2003).

Here, the trial court did not deny class certification based on the potential for a large award of aggregate damages. Rather, the court held that a class action is not a superior means of adjudicating plaintiffs' FACTA claims. Thus, plaintiffs' reliance on <u>Carbo</u> is misplaced.

Plaintiffs also rely on <u>Lee</u> and <u>Delgozzo v. Kenny</u>, 266 N.J. Super. 169 (App. Div. 1993), to support their position that a class action is the superior mode of litigation. In <u>Lee</u>, a New Jersey Consumer Fraud Act (CFA) case, our

Court rejected defendant's "argument that its refund policy provided every dissatisfied purchaser a superior alternative to a lawsuit." 203 N.J. at 529. The Court found that it was unlikely that thousands of claimants would file individual actions regarding a product that costs about $40. Id. at 528. "[M]ost importantly," the Court found class action was superior to the company's refund policy and thousands of individuals' small claims because the Court previously held that "a refund policy–particularly in the case of small claims–would not immunize a merchant from a CFA claim." Id. at 529 (citing Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 561 (2009)).

In Delgozzo, another CFA case, we reversed the trial court's denial of class certification because the trial court failed to explain why the proposed class of 35,000 individuals "would be 'unruly' to an extent beyond that which would exist in any class action[,]" and it never addressed the factors expressly listed in Rule 4:32-1(b)(3). Id. at 193, 195. In a CFA case, trial courts must consider "the very real possibility that failure to certify the class could result in the end of the litigation," and should "be of particular concern with respect to" the superiority inquiry. Id. at 192 (citing In re Cadillac, 93 N.J. at 435-36).

Both Lee and Delgozzo present legal and factual issues not present in this case. Here, defendants do not assert that any company policy provides a superior method of resolving plaintiffs' claims, as in Lee, and instead argue

that individual actions in the small claims section is the appropriate means to resolve the claims. Moreover, in Delgozzo, the trial court did not analyze the factors under Rule 4:32-1(b)(3), and class certification will not prevent plaintiffs or any other member of the putative class from pursuing an individual claim.

In support of their argument that a class action would be the superior means to adjudicate the FACTA claims of the putative class, plaintiffs rely on several federal cases. Toys "R" Us, 300 F.R.D. at 365 (finding class action was superior where defendant printed more than 29,000,000 noncompliant receipts nationwide, including, 2,074,428 noncompliant receipts in California); Engel v. Scully & Scully, Inc., 279 F.R.D. 117, 130 (S.D.N.Y. 2011) (finding class action was superior where 3000 to 5000 noncompliant receipts were issued).

However, "[o]n questions of federal constitutional law and statutory law, only decisions of the United States Supreme Court are binding on the courts of this state." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.5 on R. 1:36-3 (2020). State courts are not bound by lower federal court opinions, including the Circuit Court of Appeals. Ibid.; see generally Ryan v. Am. Honda Motor Co., 186 N.J. 431, 436 (2006). "Nonetheless, [reported] federal opinions, including district court decisions, may have significant persuasive effect. For

example, as a matter of comity, a [s]tate court will give weight to a lower federal court's interpretation of federal law." Ibid.; see, e.g., Royster v. N.J. State Police, 439 N.J. Super. 554, 570 n.7 (App. Div. 2015).[6]

Far more persuasive is the reasoning of the federal court that held O'Shea and Trisal failed to state a claim under FACTA and dismissed their complaints seeking class certification. O'Shea, 2017 U.S. Dist. 122424 at *16. The federal court relied on Crupar-Weinmann v. Paris Baguette Am., Inc., 861 F.3d 76, 81 (2d. Cir. 2017), which held that the printing of a credit or debit card expiration date did not "pose a material risk of harm." The Crupar-Weinmann court reasoned:

> Congress expressly observed that the inclusion of expiration dates did not raise a material risk of identity theft, presumably to curtail the hundreds of lawsuits [that] were filed [after FACTA's passage] alleging that the failure to remove the expiration date was a willful violation . . . even where the account number was properly truncated[, and n]one of these lawsuits contained an allegation of harm to any consumer's identity. Congress could not have been clearer in stating that [t]he purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to

---

[6] Moreover, "[w]here there is no New Jersey case law relevant to a class certification issue, 'our courts have consistently looked to the interpretations given the federal counterpart for guidance.'" Laufer, 385 N.J. Super. at 183 (quoting Delgozzo, 266 N.J. Super. at 188).

> business and potentially increased prices to consumers.
>
> [Id. at 81-82 (alterations in original) (internal citations and quotations omitted).]

"[T]he printing of an expiration date on an otherwise properly redacted receipt does not constitute an injury in fact sufficient to establish . . . standing to bring a claim alleging a bare procedural violation of FACTA." Id. at 82.

### C. Predominance

Plaintiffs next argue that the trial court erred by determining sua sponte they failed to meet the predominance requirement of Rule 4:32-1(b)(3). "To determine predominance under Rule 4:32-1(b)(3), the court decides 'whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."'" Dugan, 231 N.J. at 48.

The "predominance requirement" of Rule 4:32-1(b)(3) "is more demanding than the commonality requirement." Muise v. GPU, Inc., 371 N.J. Super. 13, 37 (App. Div. 2004). It "requires an evaluation of the legal issues and the proof needed to establish them." In re Cadillac, 93 N.J. at 430. "As a matter of efficient judicial administration, the goal is to save time and money for the parties and the public and to promote consistent decisions for people with similar claims." Ibid.

Plaintiffs correctly point out that "Rule 4:32-1(b)(3) does not demand a showing 'that there is an "absence of individual issues or that the common issues dispose of the entire dispute," or "that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner."'" Ibid. (alterations in original) (quoting Lee, 203 N.J. at 520). Additionally, plaintiffs need not "demonstrate that the number of common issues exceeds the number of individual issues." Ibid. (citing Varacallo v. Mass. Mut. Life Ins., 332 N.J. Super. 31, 45 (App. Div. 2000)).

This factor, however, requires "a qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are more of one than the other." Ibid. (quoting Lee, 203 N.J. 519-20). Whether the issue of predominance is found involves "a close analysis of the facts and law." Ibid. (quoting Iliadis, 191 N.J. at 109). The courts must first consider "the number and, more important[ly], the significance of common questions must be considered." Iliadis, 191 N.J. at 108.

Next, the "court must decide whether the 'benefit from the determination in a class action [of common questions] outweighs the problems of individual actions.'" Ibid. (alteration in original) (quoting In re Cadillac, 93 N.J. at 430). The trial court found that plaintiffs did not provide "sufficient evidence to

support a claim that . . . the alleged class has been damaged in such a way that would be representative of the whole."  This lack of information "puts [p]laintiffs' claims at odds with the legislative purpose of FACTA and points to an overall lack of demonstrable damages in the case of these particular [p]laintiffs."  Finally, there must be a "common nucleus of operative facts[,]" to establish predominance.  Ibid.  (quoting In re Cadillac, 93 N.J. at 431).

Here, the trial judge found that plaintiffs had not pled sufficient facts to establish the predominance factor because

> [t]he potential disparate nature of damages that may or may not have been suffered by consumers who received [noncompliant] receipts would require courts to adjudicate [d]efendants' liability on a case by case basis as such claims may not be representative of the entire class.  It is this type of indispensable case by case determination that cuts directly against the purpose of Rule 4:32-1's class certification predominance and superiority prongs.

We agree with the trial court that the sheer amount of uncertainties in respect of the amount of potential FACTA claims against defendants, and any harm that arose from such violations, renders it difficult to determine a common nucleus of operative facts.  Therefore, we conclude that the trial court did not err in finding plaintiffs failed to establish the predominance factor of Rule 4:32-1(b)(3).

## III.

Next, plaintiffs argue that the trial court erred by finding it did not have personal jurisdiction to entertain the complaints of Baskin, O'Shea, and Trisal. We conclude the court correctly found that it could not exercise general jurisdiction over defendants and lacked specific jurisdiction to consider the claims of O'Shea and Trisal. We also conclude that the court erred by finding it did not have specific jurisdiction to consider Baskin's claims against defendants.

Our state's "long-arm statute 'provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'" Koch v. Pechota, 744 Fed. Appx. 105, 110 (3d. Cir. 2018) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d. Cir. 2004)). Rule 4:4-4(b)(1), our long-arm statute, "has been construed as vesting New Jersey's courts with jurisdiction over non-residents to the outer limits permitted by due process." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1.1 on R. 4:4-4 (2020). Accordingly, New Jersey state courts refer "to federal law to interpret the limits on personal jurisdiction." Koch, 744 Fed. Appx. at 110 (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d. Cir. 1998)).

Personal jurisdiction over a defendant may be exercised through general jurisdiction or specific jurisdiction. Plaintiffs contend the trial court only

addressed the issue of specific jurisdiction, not whether general jurisdiction applied. Our review of the record shows the trial court did address general jurisdiction:

> In this case, [d]efendant P.C. Richard & Son, LLC is a New York limited liability company. Defendant P.C. Richard & Son, Inc. is a Delaware corporation. Both entities maintain their principal place[s] of business in New York. Thus, [d]efendant P.C. Richard & Son, LLC is subject to general jurisdiction in New York and [d]efendant P.C. Richard & Son, Inc. is subject to general jurisdiction in both Delaware and New York. As general jurisdiction does not exist in this case, this [c]ourt would need to be able to exercise specific jurisdiction over [d]efendants.

General jurisdiction over a corporation exists where "the corporation is fairly regarded as at home[,]" such as its domicile, place of incorporation, or principal place of business. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). "[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in" another state. Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014).

A court that has general jurisdiction over a defendant "may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state." Bristol-Myers Squibb v. Superior Court, 137 S. Ct. 1773, 1780 (2017) (quoting Goodyear, 564 U.S. at 919). "'[O]nly a limited

set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that state." Ibid. (quoting Daimler, 571 U.S. at 137).

Plaintiffs argue that defendants conduct more than twenty-five percent of their business in New Jersey, and generate nearly twenty-five percent of their revenue from sales in New Jersey, thereby establishing general jurisdiction. While Goodyear did not hold that the only forums in which a corporation may be subjected to general jurisdiction are where it is incorporated, or where it maintains its principal place of business, the United States Supreme Court also rejected the premise of "approv[ing] the exercise of general jurisdiction in every [s]tate in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" Daimler, 571 U.S. at 138. The proper inquiry is, therefore, "whether that corporation's 'affiliations with the [s]tate are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" Ibid. (alteration in original) (quoting Goodyear, 564 U.S. at 919).

Defendants are neither incorporated in New Jersey, nor do they have their principal place of business here. This court has noted the incredible difficulty of establishing "general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 608 (App.

Div. 2017) (alteration in original) (quoting <u>Chavez v. Dole Food Co.</u>, 836 F.3d 205, 223 (3d. Cir. 2016)).

The proper inquiry for general jurisdiction is "'an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" <u>Id.</u> at 603 (alteration in original) (quoting <u>BNSF Ry. v. Tyrell</u>, 137 S. Ct. 1549, 1559 (2017)). Continuous activity within a state is insufficient "to support the demand that the corporation be amenable to suits unrelated to that activity." <u>Id.</u> at 599.

As previously stated, P.C. Richard & Son, LLC is a New York limited liability company and P.C. Richard & Son, Inc. is a Delaware corporation. Plaintiffs' assertion that defendants' New Jersey locations are "very close" to their New York headquarters is unconvincing. Defendants certified that they conduct business in New York, New Jersey, Pennsylvania, and Delaware. They clearly cannot be considered to be "at home" in all four states. Moreover, defendants also certified that more than three-quarters of their business is conducted outside of the State of New Jersey. Thus, the trial court correctly found the New Jersey courts could not exercise general jurisdiction over defendants.

The trial court also held that New Jersey state courts do not have specific jurisdiction over defendants in this matter. The court found:

O'Shea and Trisal are New York [r]esidents. . . . O'Shea and Trisal's claims arise out of receipts they each received at [d]efendants' New York stores. While [d]efendants do operate numerous retail stores in New Jersey, this fact by itself does not meet the requirements of specific jurisdiction under Bristol-Myers. Specifically, . . . O'Shea and Trisal fail to allege that the claims they have asserted against [d]efendants "aris[e] out of or relat[e]" to [d]efendants' operations in New Jersey. See Bristol-Myers, 137 S. Ct. at 1780. Thus, specific jurisdiction is also lacking because the claims alleged do not have any connection with [d]efendants' contacts in New Jersey as the forum state. Therefore, notwithstanding this [c]ourt's principal ruling that class certification in this matter is not appropriate under Rule 4:32-1, the [c]ourt finds that it may not properly exercise personal jurisdiction over the non-resident [p]laintiffs' claims.

In order for specific jurisdiction to exist, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation.'" Bristol-Myers, 137 S. Ct. at 1780 (alteration in original) (emphasis added) (quoting Goodyear, 564 U.S. at 919). When no such connection exists, specific jurisdiction is not achieved "regardless of the extent of a defendant's unconnected activities in the [s]tate." Id. at 1781; see Goodyear, 564 U.S. at 931 n.6.

The trial court correctly found that O'Shea and Trisal's claims are wholly unrelated to any action or injury caused by defendants in New Jersey. O'Shea and Trisal are New York residents who made purchases at defendants' New

28

York stores allegedly in violation of FACTA. We discern no error in the trial court's dismissal of the complaint as to O'Shea and Trisal.

IV.

Finally, plaintiffs argue, and defendants concede, that Baskin's complaint should be reinstated and proceed as an individual action. Rule 4:32-2(f)(4) permits the court to "make appropriate orders" to amend pleadings "to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly . . . ."

Baskin is a New Jersey resident with an alleged FACTA claim emanating from one of defendants' New Jersey stores. Hence, the trial court erred in dismissing Baskin's complaint and barring her from proceeding individually.

Accordingly, we conclude that the trial court correctly denied class certification and properly dismissed O'Shea and Trisal's claims. However, we reverse the dismissal of Baskin's claims and reinstate the complaint as to her individual claims only.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION